IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JANO JUSTICE SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07-3105 |
| ) | |
| CYRIL WOODSON, ) | |
| ) | |
| Defendant. ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Cyril Woodson's Motion for Partial Summary Judgment (d/e 44). Woodson formerly worked for Plaintiff Jano Justice Systems, Inc. (Jano Justice or JJS). Jano Justice claims that Woodson wrongfully began working for a competitor in 2006. Jano Justice has brought a three-count Complaint against Woodson for breach of a restrictive covenant in an employment agreement (Count I), breach of fiduciary duty (Count II), and violation of the Illinois Trade Secrets Act (Count III). Complaint for Damages and Injunctive Relief (d/e 1) (Complaint). Woodson now moves for partial summary judgment on Counts I and II. For the reasons set forth below, the Motion is ALLOWED

1

in part. Woodson is entitled to partial summary judgment on Count I, but not on Count II.

STATEMENT OF FACTS

Vasco L. Bridges, Jr., and Sam Burton owned a Mississippi corporation named Jano Data Systems, Inc. (Jano Data or JDS).[1] Jano Data provided computer software and related services to state courts. On December 22, 1998, Woodson signed an Employment Agreement (Employment Agreement) with Jano Data. The Employment Agreement contained a restrictive covenant. The covenant provided in relevant part:

> I agree that for a period of two (2) years after termination of my employment, I will not, directly or indirectly, engage in any business which would unfairly exploit my knowledge of JDS' Intellectual Property or Proprietary Information. . . . I understand and agree that it does prohibit me, for a period of two years following termination of my employment, from utilizing my knowledge of JDS' Intellectual Property and/or Proprietary Information for the purpose of developing or marketing any products which are in direct competition with the products of JDS. . . . I accept this competition restriction without any geographical limits.

Motion, Exhibit 1, Employment Agreement, ¶ 6.1. The Employment Agreement also provided that "in the event that JDS ceases business

---

[1] The Court notes that neither party followed the Local Rules in the briefing of this Motion. Local Rule 7.1(D). Counsel should follow the rules hereafter in this matter.

2

activities, Employee is released from any and all obligations under the terms of this Agreement." Id., ¶ 8.1. The Employment Agreement stated that, "This Agreement shall enure to the benefit of, and be binding upon, JDS and its subsidiaries and affiliates together with their successors and assigns." Id., ¶ 8.2. The Employment Agreement also stated that its terms would be governed by Mississippi law. Id., ¶ 8.9.

In 2002, Bridges and Burton formed Jano Justice as a Mississippi corporation. By September 2002, Woodson had started working for Jano Justice. Motion, Exhibit 2, Jano Justice Pay Statement for Woodson dated September 13, 2002. Jano Justice provided Woodson with an employee handbook that said that he was an at-will employee. Motion, Exhibit 3, Policy Manual, at 5. Woodson states in his Affidavit:

> I have not developed or marketed any computer software products in competition with the alleged computer software products of Jano Data Systems, Inc. at any time since leaving employment with Jano Data Systems, Inc. in 2002.

Motion, Exhibit A, Affidavit of Cyril Woodson, ¶ 14.

Jano Justice has asserted that it is an assignee of Jano Data's rights under the Employment Agreement. Plaintiff's Response to Motion for Partial Summary Judgment (d/e 46) (Response), at 2. Jano Justice has

submitted a one-page document entitled, "JANO DATA SYSTEMS, INC. Board of Directors Meeting Minutes." Response, Exhibit A (the Minutes). The Minutes are dated April 27, 2003. The Minutes state, "Sam and Vasco agreed to move all assets and liabilities of JDS to JJS and to keep Mississippi employees in Mississippi plan for one year." Id. Jano Justice has provided no affidavit, deposition testimony, or other sworn evidence to authenticate the Minute. The Minutes are an unauthenticated document that is not competent evidence to oppose a motion for summary judgment. See Fed. R. Civ. P. 56(e).

Woodson worked for Jano Justice until he resigned on December 3, 2006. Complaint, ¶ 9; Answer to Complaint (d/e 11) (Answer), ¶ 9. The Complaint alleges that Woodson took steps to compete with Jano Justice before he resigned on December 3, 2006. Complaint, Count II, ¶ 12. Woodson denied this allegation in his Answer. Answer, Count II, ¶ 12. Neither party, however, has presented any statement of undisputed fact, nor presented any evidence, regarding this allegation. See generally Motion and Plaintiff's Response.

## ANALYSIS

Woodson now asks for partial summary judgment on Counts I and II.

At summary judgment, Woodson must present evidence that demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Jano Justice. Any doubt as to the existence of a genuine issue for trial must be resolved against Woodson. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Once Woodson has met his burden, Jano Justice must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The Court will address each Count in order.

COUNT I

Jano Justice claims that Woodson breached the restrictive covenant in the Employment Agreement when he marketed competing software after December 3, 2006. The Employment Agreement is governed by Mississippi law.[2] In interpreting the Employment Agreement, the Court is to give clear

---

[2] Restrictive covenants are restraints on trade and individual freedom and are not favored in Mississippi; however, such agreements will be enforced if they are reasonable. <u>Empiregas, Inc. of Kosciusko v. Bain</u>, 599 So.2d 971, 975 (Miss. 1992). Woodson does not challenge the reasonableness of the covenant.

meaning to the written terms of the contract. HeartSouth, PLLC v. Boyd, 865 So.2d 1095, 1105 (Miss. 2003). In this case, the Employment Agreement stated that Woodson was subject to a restrictive covenant for a period of two years after he left Jano Data's employ. The undisputed facts shows that he left Jano Data by September 2002, to work for Jano Justice. Jano Justice provided him with an employee manual that stated that he was an at-will employee. Thus, Woodson was subject to the restrictive covenant from 2002 until 2004. He, therefore, could not have violated the covenant after December 3, 2006.

Jano Justice argues that it was an assignee of Jano Data's rights under the Employment Agreement, and so, Woodson continued to work under the terms of the Employment Agreement until his resignation on December 3, 2006. Jano Justice relies on the Minutes to establish that it is an assignee of Jano Data. The Minutes are not properly authenticated, and so, are not competent evidence to oppose a summary judgment motion.

Even if the Minutes were properly authenticated, the document would not support Jano Justice's position. Assuming the Minutes are accurate, Jano Data assigned Jano Justice all its rights under the Employment Agreement on April 27, 2003. See EB, Inc. v. Allen, 722 So.2d 555, 564

(Miss. 1998) (discussing the legal effects of an assignment). Woodson started working for Jano Justice some time before September 2002. Thus, on April 27, 2003, Jano Data had the right under the Employment Agreement to enforce the restrictive covenant for the remainder of the two-year period, which would expire sometime before September 2004. If the Minutes are accurate, Jano Data assigned to Jano Justice the right to enforce the restrictive covenant for that period of time. After September 2004, neither Jano Data nor Jano Justice had any remaining rights under the restrictive covenant in the Employment Agreement. Woodson, therefore, is entitled to partial summary judgment on Count I.

COUNT II

Jano Justice claims in Count II that Woodson violated his fiduciary duty to Jano Justice. An employee has a duty of loyalty to his current employer, during the term of his employment, that precludes him from working for the benefit of a competitor. Voss Engineering Inc. v. Voss Industries, Inc., 134 Ill.App.3d 632, 636, 481 N.E.2d 63, 66 (Ill.App. 1st Dist. 1985); ABC Trans Nat. Transport, Inc. v. Aeronautics Forwarders, Inc., 62 Ill.App.3d 671, 683, 379 N.E.2d 1228, 1237 (Ill.App. 1st Dist. 1978). Jano Justice alleges that Woodson violated this duty when he took

steps to compete with Jano Justice during the term of his employment and before he resigned on December 3, 2006. Complaint, Count II, ¶ 12. Woodson presented no evidence on this issue to support his Motion. Woodson, therefore, failed to meet his initial burden to show that no issues of fact exist regarding this claim. Celotex, 477 U.S. at 323-24. Woodson, thus, is denied partial summary judgment on Count II.

Woodson argues that Jano Justice's breach of fiduciary duty claim in Count II has been preempted by the Illinois Trade Secrets Act (Act). 765 ILCS 1065/1 et seq. The Court disagrees. Section 8 of the Act states: "This Act does not affect . . . civil remedies that are not based upon misappropriation of a trade secret." 765 ILCS 1065/8(b)(2) (2009). Jano Justice's claim in Count II is based on Woodson's duty of loyalty as an employee rather than on misappropriation of a trade secret. The Act, therefore, does not preempt Count II. Hecny Transp., Inc. v. Chu, 430 F.3d 402, 404-05 (7th Cir. 2005).

THEREFORE, Defendant Cyril Woodson's Motion for Partial Summary Judgment (d/e 44) is ALLOWED in part. Partial summary judgment is entered in favor of Defendant Cyril Woodson and against Plaintiff Jano Justice Systems, Inc., on Count I of the Complaint. The

Motion is otherwise DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   September 16, 2009

    FOR THE COURT:

                                            s/ Jeanne E. Scott
                                            JEANNE E. SCOTT
                                UNITED STATES DISTRICT JUDGE